**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| Bettye Jackson, as Independent Administrator of the estate of Eugene Washington, deceased,<br><br>    Plaintiff,<br><br>    v.<br><br>Sheriff of Winnebago County, in his official capacity, and Jeff Valentine, individually and as an agent<br><br>    Defendants. | Case No. 3:20-cv-50414<br><br>Honorable Iain D. Johnston |

**MEMORANDUM ORDER AND OPINION**

Plaintiff Bettye Jackson, the administrator of the estate of decedent Eugene Washington, brings this action against the Sheriff of Winnebago County and Jeff Valentine, a corrections officer at the county jail. After this Court granted summary judgment on Jackson's federal claim, it relinquished jurisdiction over two supplemental state-law claims. The Seventh Circuit, however, reversed and remanded, advising that the question of supplemental jurisdiction over the state-law claims should be "revisit[ed]." *Jackson v. Sheriff of Winnebago Cnty.*, 74 F.4th 496, 503 (7th Cir. 2023). This Court then allowed supplemental briefing on the state-law claims before ruling on the defendants' motion for summary judgment. Dkt. 73. Having considered it, the motion is denied.

**I. Background**

Eugene Washington was a pre-trial detainee at the Winnebago County Jail. Pl.'s 56.1 Resp. (P56.1R) ¶ 7, at Dkt 48. Early on October 28, 2019, Washington's

1

cellmate, Lamar Simmons, awoke to the sound of Washington gasping for air. Defs.'
56.1 Resp (D56.1R) ¶ 24, at Dkt. 52. He used the cell's intercom, and he says he
clearly reported to officers that Washington couldn't breathe but was nonetheless
told to use the intercom only for emergencies and promptly hung up on. *Id.* ¶¶ 24-
25. Jeff Valentine, the officer on the other end, maintains that he only heard him
complain about the cell's plumbing, asked him to repeat himself, and only hung up
after he again heard the same thing. P56.1R ¶¶ 28-31. Eight minutes later,
Simmons called and Valentine answered again; this time, Valentine says he heard
him clearly and immediately directed other officers to respond. *Id.* ¶ 35. They
arrived roughly thirteen minutes after the initial call. Despite their efforts to revive
him, and later those of EMTs, Washington died. *Id.* ¶¶ 36-52.

## II. Legal Standard

A party is entitled to summary judgment when it demonstrates that there is
no genuine dispute as to any material fact and judgment is proper as a matter of
law. Fed R. Civ. P. 56. A fact is material when it could affect the outcome of the suit
under the governing law, and a dispute is genuine when it could lead a reasonable
jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby,
Inc.,* 477 U.S. 242, 248 (1986). The Court must view the record in the light most
favorable to the non-moving party and draw all reasonable inferences in favor of
that party. *Anderson*, 477 U.S. at 255; *Smith v. Crounse Corp.*, 72 F.4th 799, 804
(7th Cir. 2023).

## III. Analysis

2

Jackson brings a wrongful death action (Count II) and a survival action sounding in negligence (Count III). A survival action allows a decedent's representative to pursue claims that accrued before his death. *See Turcios v. DeBruler Co.*, 32 N.E.3d 1117, 1123 (Ill. 2015); 755 ILCS 5/27-6. A wrongful death claim has the same elements as a negligence claim but requires as a condition precedent that the decedent have suffered an injury that would have allowed him to maintain an action had he lived; the claim is brought by his personal representative. *Williams v. Manchester*, 228 Ill. 2d 404, 421-422 (2008). While a wrongful death claim is derivative of the decedent's rights in that it depends on his having a claim before death, *id.*, damages are not recovered for his injury, but rather for any "pecuniary injuries" suffered by the decedent's surviving spouse and next of kin. 740 ILCS 180/1 *et seq*.

Both claims ordinarily require only negligence to lie. Under the Illinois Governmental Employees Tort Immunity Act, however, for Valentine to be liable, it must additionally be shown that despite knowing that Washington required immediate medical care, he failed to reasonably summon it through "willful and wanton conduct." 745 ILCS 10/4-105. Willful and wanton conduct is "remarkably similar" to that constituting deliberate indifference. *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) (cleaned up).[1]

---

[1] *See also Farmer v. Brennan*, 511 U.S. 825, 836 (1994) (describing deliberate indifference as "somewhere between the poles" of negligence and purpose or knowledge, roughly the equivalent of recklessness); *accord Sparks v. Starks*, 367 Ill.App.3d 834 (1st Dist. 2006) (describing willful and wanton conduct as an aggravated form of negligence, a "hybrid" between negligent and intentionally tortious conduct).

3

With respect to both claims, then, a genuine dispute of material fact must be shown as to three elements: [2] (1) whether Valentine breached his duty to Washington willfully and wantonly; (2) whether Washington suffered actionable injury before his death; and (3) whether Valentine's putative breach caused that injury, and, in the case of the wrongful death claim, also caused death. *Thompson v. City of Chicago,* 472 F.3d 444, 457 (7th Cir.2006) (cleaned up). Jackson succeeds on all counts, and summary judgment is therefore inappropriate.

The Seventh Circuit has resolved the first issue. The law of the case,[3] as relevant here, forbids lower courts from reconsidering on remand an issue "expressly or impliedly decided" by a higher court. *Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397, 407 (7th Cir. 2018). The Seventh Circuit deemed summary judgment as to deliberate indifference inappropriate. *Jackson*, 74 F.4th at 503. Because deliberate indifference is essentially the same as willful and wanton conduct under the Immunity Act, summary judgment is likewise inappropriate here.[4]

---

[2] Correctional officers undoubtedly owe a duty of reasonable care to safeguard prisoners' health under Illinois law. *E.g., Dezort v. Vill. of Hinsdale*, 35 Ill. App. 3d 703, 710 (1976). This is an affirmative "duty to rescue" because of the special relationship between correctional officer and inmate on account of the inmate's custody; without access to alternative rescuers, the correctional officer implicitly assumes such a duty. *Stockberger v. United States*, 332 F.3d 479, 481–82 (7th Cir. 2003); *Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 723 (7th Cir. 2012) (finding that this is true under Illinois tort law).
[3] Neither party has raised the law of the case, but courts may raise it sua sponte. *U.S. v. Wallace*, 573 F.3d 82, 90 n.6 (1st Cir. 2009).
[4] *See* 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4478 (3d ed.) ("If the analysis used to dispose of an issue before the court controls disposition of an issue that was not considered . . . the law of the case established by the analysis may control disposition of the new issue.").

Next, there must be evidence that before his death, Washington suffered an injury that would have supported an action by him had he lived. The Seventh Circuit held on appeal that "any verdict premised on [his] prolonged suffering would be unduly speculative." Id. at 502.[5] The law of the case thus forecloses any claim based on this theory. There is, however, evidence for a theory based on other injuries. Dr. Peters opined in his deposition that hemorrhages in Washington's lungs, apparent during his autopsy, were likely an "artifact" of CPR. Dkt. 55, Ex. K at 29. He also noted abrasions on Washington's chest that were consistent with "prolonged CPR," which is often accompanied by rib or sternum fractures. *Id.* at 44-47. These are "present injuries" that, had Washington lived, could have sustained a claim. *See Williams*, 228 Ill. at 425.

Finally, there is a genuine dispute of material fact as to whether both these injuries and Washington's death were caused by Valentine. Although Dr. Peters did not offer any counterfactual opinions—what state the heart or brain might have been in because of the delay had Washington survived, for instance—he offered enough to proceed with respect to the injuries identified. Delaying rescue can foreseeably lead to the need for more extensive or intrusive interventions than would otherwise have been required; resulting injuries are thus within the scope of the risk. Because there is evidence that Washington sustained injuries because of

---

[5] The Seventh Circuit's precise inquiry was whether there was "verifying medical evidence," expert or otherwise, to support a causal link between any breach and "Washington's prolonged suffering." *Jackson*, 74 F.4th at 502. Its reason for answering no was not an attenuated link between cause and effect, but the lack of evidence that there *was* any such effect. This analysis impliedly resolves the question before the Court.

prolonged CPR—which may have been unnecessary had help arrived sooner, or at least produced less severe injuries absent delay—this element survives summary judgment.

There is also enough evidence to create a genuine dispute as to whether Valentine's putative breach caused Washington's death. This conclusion is not mandated by the law of the case—the Seventh Circuit held only that there was sufficient evidence to maintain a claim based on a loss of some chance of survival—but the evidence it relied on equally could allow a reasonable jury to conclude that the delay was a but-for and legal cause of Washington's death.

## IV. Conclusion

For the foregoing reasons, the defendants' motion is denied.


Date: January 3, 2024

_____
Honorable Iain D. Johnston